Of Counsel:
FUKUNAGA, MATAYOSHI, HERSHEY & CHING

WESLEY H. H. CHING        2896-0
KATHLEEN M. DOUGLAS   5036-0
841 Bishop Street
1200 Davies Pacific Center
Honolulu, Hawaii 96813
Telephone: (808) 533-4300

Attorneys for Defendants
JAMES H. PFLUEGER, PFLUEGER
PROPERTIES and PILA`A 400, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| UNITED STATES OF AMERICA, and DEPARTMENT OF HEALTH, STATE OF HAWAII,<br><br>           Plaintiffs,<br><br>vs.<br><br>JAMES H. PFLUEGER; PFLUEGER PROPERTIES; and PILAA 400 LLC,<br><br>           Defendants. | CIVIL NO. CV 02-00521 SPK BMK<br><br>DEFENDANTS JAMES H. PFLUEGER, PFLUEGER PROPERTIES, AND PILA`A 400, LLC'S MEMORANDUM IN SUPPORT OF ENTRY OF CONSENT DECREE AND OPPOSITION TO PLAINTIFFS' JOINT [PROPOSED] ORDER APPROVING ENTRY OF CONSENT DECREE FILED MAY 26, 2006; DEFENDANTS JAMES H. PFLUEGER, PFLUEGER PROPERTIES, AND PILA'A 400, LLC'S PROPOSED ORDER APPROVING ENTRY OF CONSENT DECREE; CERTIFICATE OF SERVICE |
| LIMU COALITION, a Hawai`i non-profit corporation, and KĪLAUEA NEIGHBORHOOD ASSOCIATION, a Hawai`i non-profit corporation,<br><br>           Plaintiffs,<br><br>vs. | CIVIL NO. 06-00140 BMK |

| | |
|---|---|
| JAMES H. PFLUEGER; PFLUEGER PROPERTIES LP, a Hawaii limited partnership; and PILAA 400 LLC, a Hawaii limited liability corporation,<br><br>　　　　　Defendants. | Date:  June 16, 2006<br>Time:  2:00 p.m.<br><br>Honorable Barry M. Kurren |

**DEFENDANTS JAMES H. PFLUEGER, PFLUEGER PROPERTIES, AND PILA`A 400, LLC'S MEMORANDUM IN SUPPORT OF ENTRY OF CONSENT DECREE AND OPPOSITION TO PLAINTIFFS' JOINT [PROPOSED] ORDER APPROVING ENTRY OF CONSENT DECREE FILED MAY 26, 2006**

Defendants JAMES PFLUEGER, PFLUEGER PROPERTIES, and PILA`A 400, LLC (collectively "Defendants") support the entry of the Consent Decree lodged with this Court on March 9, 2006. As succinctly stated by the United States of America ("United States") in its Memorandum of Law in Support of Its Motion to Enter Consent Decree ("Memorandum in Support"), this Consent Decree represents a concerted four year effort to resolve claims levied against Defendants for construction activities on the north shore of Kauai. The Consent Decree as written and executed is a fair and reasonable settlement of claims against the Defendants by the United States, the Department of Health, State of Hawaii ("State of Hawaii"), the County of Kauai and the Limu Coalition and the Kilauea Neighborhood Association (the "Citizens") (collectively with Defendants referred to as "the Parties") and should be entered as an Order of this Court.

However, Defendants strongly oppose the Plaintiffs' Joint [Proposed] Order Approving Entry of Consent Decree ("Plaintiffs' Proposed Order") submitted by the United States and joined by the State of Hawaii (collectively "Plaintiffs")[1]. Defendants do not consent to Plaintiffs'

---

[1] On May 26, 2006, Plaintiff Department of Health, State of Hawaii filed its Joinder in Plaintiff United States of America's Motion to Enter Consent Decree and Plaintiffs' Joint [Proposed] Order

1

Joint Proposed Order because the Proposed Order changes the substantive scope of the Consent Decree by including an inconsistent, extrinsic provision relating to an event that occurred **after** the lodging of the Consent Decree. Further, the Proposed Order is improper because the State of Hawaii has **no right** under the Consent Decree to withhold its consent to entry of the settlement as it is currently drafted. Furthermore, by its own admission, the United States has agreed that the settlement provides a fair resolution to this matter and no public comments have provided contrary information. Thus, under the terms of the Consent Decree, the United States has **no basis** to withhold its approval of the settlement as lodged with this Court on March 9, 2006. In addition, the Consent Decree is not yet entered and the Plaintiffs' attempt to modify the substantive terms of the Consent Decree is both premature and fails to follow the modification procedures contained in the Consent Decree. Finally, and perhaps most disturbingly, without any facts and without any filed claims, the Plaintiffs' Proposed Order attempts to link alleged future tort law claims - arising from a tragic event that occurred after this Consent Decree was lodged - to the Defendants under the imprimatur of this Court via a declaratory ruling. This Court should not permit Plaintiffs to use a Court Order as a vehicle to facilitate a transparent and irresponsible political agenda.

    Defendants hereby submit Defendants' Proposed Order that simply allows this Court to Enter the Consent Decree as it was signed by all Parties and lodged in this Court without inappropriate commentary that undermines the negotiated settlement. Defendants respectfully

---

Approving Entry of Consent Decree filed May 26, 2006. On May 31, 2006, Plaintiffs Limu Coalition and Kilauea Neighborhood Association filed their Joinder in Plaintiff United States of America Motion to Enter Consent Decree. The Citizens took no position on whether the Court should enter the Plaintiffs' Proposed Order. See Citizens' Joinder at page 3.

request that this Court enter the Consent Decree by signing Defendants' Proposed Order Approving Entry of Consent Decree filed concurrently with this Memorandum.

I. INTRODUCTION

After years of negotiations by Plaintiffs, the Citizens, the County of Kauai and Defendants, on March 9, 2006 all Parties lodged the Consent Decree with this Court. Later that day, Plaintiffs and the Citizens held a press conference celebrating the settlement as a precedent setting victory. Although no substantive comments were filed during the requisite 30 day notice and comment period, and without any case or controversy challenging the Consent Decree, Plaintiffs now ask this Court to sign Plaintiffs' Proposed Order that fundamentally changes the negotiated settlement.

The Plaintiffs' Proposed Order is inconsistent with the position that the United States and the State of Hawaii took during the May 19, 2006 status conference. Specifically, the Proposed Order belies the United States' statement that it would move for entry of the Consent Decree without alteration. Further, the Proposed Order flies in the face of the State of Hawaii's assertion that it would file its opposition seeking modification of the Consent Decree. Packaging a Motion to Modify the Consent Decree into a Proposed Order for the Court does not change the nature of the request - it only raises questions about the motivation of the State of Hawaii. This Court is not the pulpit for partisan political gain. As such, this Court should categorically reject the Proposed Order submitted by Plaintiffs and instead, sign Defendants' Proposed Order.

II. BACKGROUND

In the United States' Memorandum of Law, the United States asserts that the settlement is "fair, reasonable, and environmentally favorable . . . ." Defendants agree. The settlement

embodies more than four years of work; in some instances it took months of punctilious drafting for all Parties to negotiate mutually agreeable language for certain paragraphs in the Consent Decree. During that time, Defendants have responsibly addressed each of the issues alleged in Plaintiffs' complaints, without trying the case in the press or attempting to manipulate public opinion. Defendants have worked cooperatively with Plaintiffs, independently shouldered all of the mediation costs, and have already completed a substantial amount of the remediation work set forth in the Consent Decree. Defendants willingly agreed to pay the negotiated penalty, not because the penalty was better than what this Court would have imposed, but because payment displayed Defendants' good faith and allowed for meaningful closure at Pila'a and Kaloko without protracted litigation.

On March 9, 2006, the Consent Decree was lodged with this Court. The United States, the State of Hawaii, and Citizens heralded the consent decree in press releases and held a press conference that received national media attention. During the federal register notice and comment period, no substantive comments to the Consent Decree were received by the United States. Based on these events, one would expect that all Parties would be before this Court supporting a "plain vanilla" motion to enter the Consent Decree with a joint proposed Order. That is not the case.

During the May 19, 2006 status conference, the State of Hawaii indicated that they believed that the Consent Decree needed to be modified. The State was neither able to articulate why the Consent Decree does not represent the bargain that was struck by the Parties, nor was the State able to explain what case or controversy would justify having this Court modify a consent decree that had not yet been entered. Taking a position contrary to the State, the United States

asserted that it would Move for Entry of the Consent Decree without modification. Based on Plaintiffs' countervailing positions, Defendants agreed to file a motion in support of the United States' motion to enter the Consent Decree and oppose the State of Hawaii's motion to modify the Consent Decree.

Instead of filing their respective motions, the United States and the State of Hawaii have taken an altogether different tack. The United States filed a Motion to Enter the Consent Decree that inaccurately characterizes the settlement and filed a Proposed Order that would have this Court accept that mis-characterization and thereby modify the settlement without briefing and without a case or controversy. This Court should reject the United States and the State of Hawaii's procedurally inappropriate and substantively inaccurate Proposed Order and should instead sign the Proposed Order submitted by the Defendants.

III.   DISCUSSION

   A.   Defendants Do Not Consent To Plaintiffs' Proposed Order Approving Entry Of Consent Decree Because It Fundamentally Changes The Agreement Reached By The Parties.

Plaintiffs' Proposed Order seeks to alter the terms of the Consent Decree by including an extrinsic provision to the Consent Decree. Plaintiffs propose that the Order Approving Entry of Consent Decree include the following provision;

> Nothing in the Consent Decree shall be deemed (1) any admission of fault or liability of any kind or nature whatsoever, or (2) any release of or waiver of any: non-water pollution claims or defenses of any kind or nature whatsoever with regard to or concerning the Kaloko Reservoir breach of March 14, 2006, and/or any loss of or damage to life or property, caused by, flowing from, or relating to the Kaloko Reservoir breach of March 14, 2006.

See Plaintiffs' Proposed Order at ¶2.

Plaintiffs' seek to circuitously modify the Consent Decree in response to events that occurred **after** lodging of the Consent Decree on March 9, 2006. The Consent Decree lodged on March 9, 2006 is the single document that reflects the agreement of each of the Parties and is the result of four years of intensive mediation and negotiation. Inclusion of an extrinsic provision, in a separate document, regarding events occurring after the Parties agreement to the terms of the Consent Decree, and which materially alter the scope of the Consent Decree makes a sham of this settlement process. Defendants do not consent to Plaintiffs' inclusion of any provisions other than those specifically agreed to and incorporated into the Consent Decree. It is patently improper for Plaintiffs to propose a material alteration of the Consent Decree under the auspices of this Court's Order.

The United States Supreme Court has stated that "the voluntary nature of a consent decree is its most fundamental characteristic". Local Number 93, Intern. Assoc. Of Firefighters, AFL-CIO v. City of Cleveland, 478 U.S. 501, 521, 106 S. Ct. 3063, 3075 (1986). The Supreme Court has acknowledged that it is the parties' consent following negotiations and ultimate agreement that provides the court with authority to enter any judgment at all, "the parties' consent animates the legal force of a consent decree". Id. at 525, 106 S. Ct. at 3077.

> **Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms**. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, **the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation**. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve.

Id. at 522, 106 S. Ct. at 3075, citing to U.S. v. Armour & Co., 402 U.S. 673, 681-682, 91 S. Ct. 1752, 1757 (1971) (emphasis added).

Without the consent of the Parties, it is axiomatic that the decree is void. The United States Supreme Court has held that, "it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all." Local Number 93, 478 U.S. at 522, 106 S. Ct. at 3075. See also United States v. Ward Baking Co., 376 U.S. 327, 84 S. Ct. 763 (1964) (the court cannot enter consent decree to which one party has not consented).

Furthermore, the Supreme Court has stated that, due to the consensual nature of a consent decree, a court should look to the consent decree itself to understand the scope of the settlement that was reached by the parties;

> **For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it.** Because the defendant has, by the decree, waived his right to litigate the issues raised, a right guaranteed to him by the Due Process Clause, the conditions upon which he has given that waiver must be respected, and **the instrument must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation.**

United States v. Armour, 402 U.S. at 681-682, 91 S. Ct. At 1757; see also Hughes v. United States, 342 U.S. 353, 357, 72 S. Ct. 306, 308 (1952) (in construing a consent decree, the Court held that whatever justification there may be now or hereafter for new terms, there is no fair support for reading that requirement into the language of the consent decree).

In this case, Defendants do not agree to the Plaintiffs' Proposed Order because the additional provision materially alters the scope of the Consent Decree. The very nature of Plaintiffs' request to include an additional provision in a document extrinsic to the Consent

8

Decree is anathema to the contractual nature of the Consent Decree. The effect of Plaintiffs' Proposed Order limits the scope of the Consent Decree and it does so without Defendants' consent.

The Plaintiffs' Proposed Order states that "nothing in the Consent Decree shall be deemed any release of or waiver of any: **non-water pollution claims or defenses of any kind or nature whatsoever** with regard to or concerning the Kaloko Reservoir breach of March 14, 2006, and/or any loss of or damage to life or property, caused by, flowing from, or relating to the Kaloko Reservoir breach of March 14, 2006." See Plaintiffs' Proposed Order at 2 (emphasis added). A review of the Consent Decree provision "effect of settlement" demonstrates that the claims released by Plaintiffs, without a doubt, include non-water pollution claims or defenses. The Consent Decree provides that the following claims are resolved:

> This Consent Decree resolves **the civil claims of the United States and the State for the violations alleged in their Complaint through the date of lodging**, as well as **the violations alleged in Findings of Violation and Order for Compliance**, United States Environmental Protection Agency Region 9, Docket No. CWA-402-9-02-043. Together with the Settlement Agreement and Order in Limu Coalition, et al. v. Pflueger, et al., Civil No. 02-00521SPK BMK (D. Haw.), this Consent Decree **resolves the claims set forth in the Citizen's complaint through the date of lodging**, together with **certain other claims**.

See Consent Decree at ¶76 (emphasis added). Examination of the United States and State of Hawaii's Complaint and the Findings of Violation and Order for Compliance clearly demonstrate that it was the intent of all the Parties that the scope of the Consent Decree resolve claims far greater that simple "water pollution claims".[2]

---

[2] The position of the United States and the State of Hawaii is that the Consent Decree only resolves water pollution claims pursuant to the Clean Water Act. This is nonsensical when viewed in conjunction with the Consent Decree, which provides that the County of Kauai is a party to the settlement. The County of Kauai has no legal authority to enforce the Clean Water Act and in fact

The Complaint filed by the United States on March 9, 2006 ("Complaint") includes allegations under the Clean Water Act, however, it also includes claims under "section 13 of the Rivers and Harbors Act of 1899 ("R&HA"), 33 U.S.C. §407, also known as the "Refuse Act," and pursuant to Section 342D-50(a) of the Hawaii Revised Statutes". See Complaint at ¶1, 31-33. Further, the Complaint includes claims relating to Defendants' alleged failure to obtain the proper permits prior to their construction activities stating, "Defendants never applied for or received an individual NPDES permit for any discharges from either the Kaloko Property or the Pila'a Property". See Complaint at ¶38-39, 55, 62-65, 76-77. The Complaint contends that Defendants engaged in unpermitted construction activities at both the Pila'a property and Kaloko Reservoir and alleges damage to the reef flats and areas below and offshore of the Pila'a property. See Complaint at ¶79. The Complaint also alleges that "**this action concerns discharges associated with construction and related activities at property located near Kilauea, Kauai, Hawaii, including area adjacent to the Kaloko Reservoir**". See Complaint at ¶35 (emphasis added). More specifically, the United States Complaint alleges "extensive grading, earthmoving, and road construction or improvement". See Complaint at ¶ 40. Particular construction activities include "clearing and grading an area above Kaloko Reservoir and the construction of a road approaching the east side of the reservoir, including the creation of cut slopes and associated grading." See Complaint at ¶41.

Similarly, the Consent Decree resolves claims contained in the EPA's Findings of Violation and Order for Compliance, United States Environmental Protection Agency Region 9, Docket No. CWA-402-9-02-043, which includes allegations of activities well beyond water

---

alleges violations against the Defendants wholly unrelated to the Clean Water Act.

pollution. The EPA Violation and Order alleges unpermitted "construction activities" including grading, culvert installation, ditch digging, and general construction activities commencing as "early as 1993 and likely also occurred in 1997, 1998, and 2000". See Findings of Violation and Order for Compliance, United States Environmental Protection Agency Region 9, Docket No. CWA-402-9-02-043 at ¶17.

A court's authority to enter a consent decree is fundamentally premised on the agreement of the Parties. In this case, the only agreement that represents the consensus of all the Parties is the Consent Decree lodged with this Court on March 9, 2006. That settlement is clearly not limited to water pollution claims under the Clean Water Act. The Defendants do not consent to the belated provision proposed by Plaintiffs as it materially alters the scope of the Consent Decree and the released claims and defenses asserted by the United States, the State of Hawaii, the Citizens, and the Defendants.

B.  Under The Terms Of The Consent Decree Neither The United States Nor The State of Hawaii Have The Authority To Withhold Approval To Enter The Consent Decree As Currently Drafted

Pursuant to the Consent Decree, the State of Hawaii has no authority to withhold consent to the settlement as drafted and signed by the Parties. Instead, the Consent Decree provides that the United States is the sole party that retains the limited right to withhold consent, stating the: "United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate". See Consent Decree at page 49-50. The State of Hawaii has no such right in the Consent Decree, and thus its attempt to alter the terms of the Consent Decree via a Proposed Order to this Court should be rejected.

As admitted by the United States in its Memorandum in Support, "neither of the two public comment letters expresses opposition to the entry of the Consent Decree and both raise only concerns that have been or will be addressed". See United States Memorandum in Support at page 17. The United States concedes that "**neither of the public comments suggests that the Consent Decree is 'inappropriate, improper or inadequate' or that the United States should otherwise withdraw from the Decree.**" See United States Memorandum in Support at page 17 (emphasis added). By the United States' own admission there is no basis for it to withhold its approval to the Consent Decree that was lodged with this Court on March 9, 2006 and this Court should Enter the Consent Decree without addition, limitation or qualification. Consequently, this Court should Enter the Consent Decree using the Proposed Order provided by Defendants.

    C.    The Consent Decree Provides The Mechanism For Modification And the United States And The State Of Hawaii Have Failed To Comply With The Provisions Of The Consent Decree

As discussed above, neither the United States nor the State of Hawaii have the authority to condition their consent to enter this settlement (as it was lodged with this Court on March 9, 2006) on substantive changes to the bargain that was agreed upon by all Parties. However, even if the United States or the State of Hawaii had a factual or legal basis to seek modification of the Consent Decree, at this juncture such a request for modification is premature. The Ninth Circuit Court of Appeals has held that modification of provisions of a consent decree cannot occur until the judgment is entered. Specifically, modification of the consent decree must "await entry of judgment and development of matters beyond the scope of the application for entry of judgment". United States v. Bechtel Corporation, 648 F.2d 660 (9th Cir. 1981). In this case, the Consent Decree is not yet entered and the Plaintiffs' modification via the Proposed Order must be rejected

as premature.

Even after this Consent Decree is entered by this Court, there is a process that all Parties must follow pursuant to the Consent Decree to modify the settlement. First, this Consent Decree may be modified only by a subsequent agreement signed by all the parties. See Consent Decree at ¶87. Here, there is no agreement signed by all the Parties establishing approval for this substantive change to the settlement. Second, if a party to the Consent Decree wants to modify the settlement, and that party is unable to get the written agreement of all Parties to the Consent Decree, then that party must file a motion with this Court seeking modification. See Consent Decree at ¶87. Plaintiffs have failed to file any motion for modification despite the State of Hawaii's claim that it would do so during the May 19, 2006 status conference.

Plaintiffs' attempt to alter the Consent Decree via a provision in Plaintiffs' Proposed Order is patently improper. Under Bechtel, the Ninth Circuit Court of Appeals has held that "modification should await entry of judgment and development of matters beyond the scope of the application for entry of judgment." Bechtel, 648 F.2d at 665. Plaintiffs' Proposed Order should be rejected as premature and in breach of the Consent Decree provisions.

D.  Plaintiffs' Proposed Order Improperly and Irresponsibly Includes Provisions Extrinsic To The Consent Decree

As discussed, the consensual nature of a consent decree mandates that the scope of the agreement be understood by looking to the four corners of the agreed upon document. United States v. Armour, 402 U.S. at 681-682, 91 S. Ct. At 1757; Hughes v. United States, 342 U.S. at 357, 72 S. Ct. at 308. In this case, the United States admits that the Plaintiffs' Proposed Order responds to events that occurred after the lodging of the Consent Decree.

In its Memorandum, the United States asserts that the new language contained in

Plaintiffs' Proposed Order is included due to the State of Hawaii's concerns "about the potential effect that entry of the Consent Decree might have on tort law claims relating to an incident at the Kaloko Reservoir that occurred after the Consent Decree was lodged". See United States Memorandum in Support at page 17. Defendants' do not consent to the inclusion of extrinsic provisions intended to allay the State of Hawaii's "concerns" relating to Kaloko Reservoir. As previously discussed, the very heart of the Consent Decree resolves all claims included in the United States' Complaint and the EPA Violation and Order through the date of lodging on March 9, 2006.

Particularly offensive is Plaintiffs' reference to the tragic events at Kaloko Reservoir giving rise to "tort law claims" against Defendants. Plaintiffs provide absolutely no factual evidence that links the Kaloko Reservoir incident to Defendants' conduct and Plaintiffs reference no legal proceeding that links Defendants with the Kaloko Reservoir tragedy. Plaintiffs' themselves have not filed any action against Defendants for these events and any suggestion that in advance legitimates any such claims by the Plaintiffs or unidentified third parties under the imprimatur of this Court is irresponsible and absolutely inappropriate in this Consent Decree. In light of the abundance of media that questions the State of Hawaii's own liability for the events at Kaloko on March 14, 2006, the Proposed Order manifests a transparent political strategy to deflect attention and responsibility from the State to the Defendants in this matter.

Finally, Defendants challenge whether Plaintiffs' Proposed Order even constitutes a modification of the Consent Decree in any traditional sense given that there is no outstanding case or controversy questioning how the Consent Decree should be applied or what the Parties intended in the settlement. Instead, the Plaintiffs are asking this Court to render an advisory

opinion on the applicability of the Consent Decree to potential, future litigation that has absolutely no place in this settlement.

This Court should reject Plaintiffs' back-door efforts to modify the Consent Decree "entered into by parties to a case after careful negotiation has produced agreement on their precise terms". United States v. Armour, 402 U.S. at 681, 91 S. Ct. At 1757. All Parties request this Court to enter the Consent Decree. The Court should enter the Consent Decree as lodged on March 9, 2006 without inclusion of extraneous provisions to the negotiated agreement.

IV. CONCLUSION

Defendants ask this Court to enter the Consent Decree as lodged with this Court on March 9, 2006. However, for the reasons stated herein and based on the authorities cited, the Court should reject the alteration contained in Plaintiffs' Proposed Order and instead, enter Defendants' Proposed Order Approving Entry of Consent Decree.

DATED:  Honolulu, Hawaii, June 5, 2006.

Respectfully submitted,

/s/ WESLEY H. H. CHING
WESLEY H. H. CHING
NOEL WISE
KATHLEEN M. DOUGLAS

Attorneys for Defendants
JAMES H. PFLUEGER, PFLUEGER PROPERTIES
and PILA`A 400, LLC