ORIGINAL

MARK J. BENNETT    2672
Attorney General of Hawai'i

LISA M. GINOZA    5154
RUSSELL A. SUZUKI    2084
Deputy Attorneys General
Department of the Attorney
General, State of Hawai'i
425 Queen Street
Honolulu, Hawai'i 96813
Telephone: (808) 586-1500
Fax: (808) 586-1239
E-mail: Lisa.M.Ginoza@Hawaii.gov
E-mail: Russell.A.Suzuki@Hawaii.gov

Attorneys for Department of Health,
State of Hawai'i

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA, and DEPARTMENT OF HEALTH, STATE OF HAWAI'I,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. PFLUEGER; PFLUEGER PROPERTIES; and PILA`A 400 LLC,<br><br>Defendants. | CIVIL NO. 06-00140 SPK BMK<br><br>RESPONSE TO DEFENDANTS' OPPOSITION TO PROPOSED ORDER APPROVING ENTRY OF CONSENT DECREE; CERTIFICATE OF SERVICE<br><br>DATE: JUNE 16, 2006<br>TIME: 2:00 P.M.<br>JUDGE: Hon. Barry Kurren |

193940_1.DOC

## RESPONSE TO DEFENDANTS' OPPOSITION TO PROPOSED ORDER APPROVING ENTRY OF CONSENT DECREE

Plaintiff Department of Health, State of Hawai'i ("DOH"), hereby responds to Defendants' Memo in Support of Entry of Consent Decree and Opposition to Plaintiffs' Joint [Proposed] Order Approving Entry of the Consent Decree ("Defendants' Opposition"). This action was initiated by the United States and the State of Hawaii for the sole purpose of enforcing three federal and state water pollution laws. After four years of negotiations, the parties devised and lodged a consent decree that all believed resolved the Plaintiffs' claims. Five days after the decree was lodged for public comment as required pursuant to 28 CFR § 50.7 a dam owned by the Defendants, located on one of the parcels of property where water pollution claims arose, breached catastrophically.

Given these circumstances, to prevent the Consent Decree from possibly being misconstrued in the future and in the interests of justice and judicial economy, the Court should issue the proposed order confirming that the Consent Decree covers the specified federal and state water pollution law claims only, and not claims in tort or any other kind.

I.  **FACTS**

On March 9, 2006, United States Department of Justice ("DOJ") and DOH filed a complaint ("Complaint") against Defendants in the above-captioned case for civil penalties and injunctive relief, pursuant to sections 309(b) and (d) and 504

of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. §§ 1319(b), (d) & 1364, and section 13 of the Rivers and Harbors Act of 1899 ("R&HA"), 33 U.S.C. §§ 407, also known as the "Refuse Act." Complaint, ¶1, 9. The Complaint alleges that the Defendants illegally discharged storm water runoff associated with their construction activities at Pila`a and Kaloko on the island of Kauai, and that those unpermitted discharges resulted in erosion and storm water runoff and damaged waters used by local residents for recreation and subsistence. Complaint, ¶s 39-81. The Complaint further alleges that at the Pila'a parcel the Defendants illegally discharged fill to navigable waters, in violation of section 301(a) of the CWA, 33 U.S.C. §§ 1311(a). DOH joined in the Complaint to bring claims against Defendants for violations of Hawaii's Water Pollution Law ("WPL"), Haw. Rev. Stat. §§342D-2, -4, -9, -30, -31 & -50, and Haw. Admin. Rules section 11-55-04, and claims that the Defendants' unpermitted discharges violated State water quality standards.[1]

The Complaint does not allege damage to individuals or property from a catastrophic dam failure.

The Complaint in Paragraph 41 listed some of the construction activities performed at the Defendants' Kaloko parcel:

---

[1] The County of Kauai reached a separate settlement with Defendants and its Complaint in state court was dismissed December 22, 2004. Consent Decree, p.2; Appendix A.

> Construction activities undertaken by Defendants at the Kaloko Property have included, among other things, clearing and grading an area above Kaloko Reservoir and the construction of a road approaching the east side of the reservoir, including the creation of cut slopes and associated grading. This construction activity began approximately in November 1997, at the latest, and continued until at least July 2002.

The Complaint in Paragraph 69 states that:

> Each day of Defendants' unpermitted discharges of pollutants, from the Pila`a Property and the Kaloko Property, including storm water associated with construction activities, is a separate violation of CWA Section 301(a), 33 U.S.C. § 1311 (a), and 342D-50, HRS, and 11-55-04, HAR.

On March 9, 2006, DOJ and DOH also lodged with the Court the Consent Decree resolving water pollution claims alleged in the Complaint against Defendants. The parties negotiated the Consent Decree to settle all the violations alleged in the Complaint under the CWA, the Refuse Act and Hawaii's Water Pollution Law, up to the date of lodging.

Early in the Consent Decree comment period, just five days after the Consent Decree was lodged, there was a catastrophic failure of a dam on Defendants' property at Kaloko. The water that was released when the dam breached killed several people and destroyed property downstream.

On May 26, 2006, DOH joined Plaintiff United States of America's Motion to Enter Consent Decree and Plaintiffs' [Proposed] Order Approving Entry of

Consent Decree filed May 26, 2006. Plaintiffs included the following provision in the proposed order they filed:

> Nothing in the Consent Decree herein shall be deemed (1) any admission of fault or liability of any kind or nature whatsoever, or (2) any release of or waiver of any: non-water pollution claims or defenses of any kind or nature whatsoever with regard to or concerning the Kaloko Reservoir breach of March 14, 2006, and/or any loss of or damage to life or property, caused by, flowing from, or relating to the Kaloko Reservoir breach of March 14, 2006.

## II.   LEGAL STANDARD

The Supreme Court has stated that a consent decree is subject to the rules generally applicable to other judgments and decrees. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378, 112 S.Ct. 748, 757, 116 L.Ed.2d 867 (1992). A consent decree may extend beyond the parameters of the pleadings in a case to include unpleaded claims. *United States v. Davis*, 261 F. 3d 1, 22 (1st Cir. 2001); *accord, United States v. Charles George Trucking, Inc.* 34 F.3d 1081, 1090-1 (1st Cir. 1994). However, a consent decree may not go beyond the court's subject matter jurisdiction. The Court stated that:

> . . . a consent decree must spring from and serve to resolve a dispute within the court's subject matter jurisdiction. Furthermore, consistent with this requirement, the consent decree must com[e] within the general scope of the case made by the pleadings, *Pacific R. Co. v. Ketchum*, 11 Otto 289, 297, 101 U.S. 289, 297,

>    25 L.Ed. (1880), and must further the objectives of the
>    law upon which the complaint was based.

*Local Number 93, International Association of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525, 106 S.Ct. 3063, 3077, 92 L.Ed. 2d 405 (1986).

### III. ARGUMENT

#### A. The Court Should Confirm That Tort Law Claims And Defenses Are Beyond Its Subject Matter Jurisdiction In This Case.

As noted above, the United States Supreme Court has stated that a consent decree must be tied to subject matter jurisdiction, the general scope of the case, and the objectives of the laws upon which the complaint is based:

>    . . . a consent decree must spring from and serve to
>    resolve a dispute within the court's subject matter
>    jurisdiction. Furthermore, consistent with this
>    requirement, the consent decree must com[e] within the
>    general scope of the case made by the pleadings, *Pacific
>    R. Co. v. Ketchum*, 11 Otto 289, 297, 101 U.S. 289, 297,
>    25 L.Ed. (1880), and must further the objectives of the
>    law upon which the complaint was based.

*Local Number 93, International Association of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 525, 106 S.Ct. 3063, 3077, 92 L.Ed. 2d 405 (1986).

The claims pleaded in the Complaint and resolved by the Consent Decree here were based solely on two federal water pollution laws, the CWA and the Refuse Act, and one state water pollution law, the Hawaii WPL. No common law

or state tort law claims were included in the Plaintiffs' complaint. Thus, under City of Cleveland, these statutes define the boundaries and scope of the Consent Decree the court enters to resolve the matters in dispute in this action.

In their opposition to the State's proposed order, Defendants argue that given the terms used, the Consent Decree indeed does cut a wider swath and "without a doubt, include[s] non-water pollution claims or defenses." See Defendants' Opposition, p. 9. Given the devastating events of March 14, 2006, and the Defendants' views as to the breadth of the Consent Decree's reach, it is in the public's interest for the Court to reiterate the limits of its subject matter jurisdiction and include the cautionary language the Plaintiffs propose so that it is clear that the scope of the Consent Decree does not extend to claims in tort or any claims other than the violations alleged under the three water pollution statutes upon which this action is based.

### B. The Court Should Enter the Proposed Order Approving the Consent Decree In the Interests of Justice Because It Is Needed to Reflect the Parties' Agreement.

### 1. The Proposed Order Would Not Materially Alter the Consent Decree, But Would Merely Confirm the Agreement In Light of Subsequent Events.

Defendants argue that Plaintiffs seek a "material alteration" to the Consent Decree with their Proposed Order Approving Entry of Consent Decree ("Proposed Order"). Defendants argue further that Plaintiffs are seeking to modify the

Consent Decree prematurely without following the procedures set forth in the Consent Decree and that "Hawaii has no right under the Consent Decree to withhold its consent to entry of the settlement as it is currently drafted." Defendants' Opposition at 3, 7-8.

Defendants mischaracterize what Plaintiffs are seeking in the Proposed Order. Plaintiffs are not proposing to change the agreement. To the contrary, with the Proposed Order Plaintiffs are trying to prevent potential misunderstandings of what was settled by the Consent Decree. Such misunderstandings may well occur if the Court does not enter the Proposed Order because of events that occurred just five days after the lodging of the Consent Decree, the catastrophic Kaloko Dam failure and resulting loss of life and destruction of property. Confusion may occur because the Complaint included counts relating to water pollution by Defendants on their Kaloko property and the Consent Decree requires remediation work across Kaloko Reservoir from Kaloko Dam. Also, the Consent Decree states that it "resolves the claims set forth in the Citizens' complaint through the date of the lodging, together with certain other claims," without specifying what those other claims are. Consent decree, ¶76. There is a risk that unless the Court enters the Proposed Order approving the Consent Decree, the Complaint and the Consent Decree may be broadly misinterpreted as waiving tort claims and or defenses.

The parties clearly contemplated the resolution of water pollution claims arising before the Consent Decree was lodged, not tort claims arising after the Consent Decree was lodged. The Proposed Order is needed to reflect that agreement of the Parties for the reasons set forth below.

### 2. The Consent Decree Resolved Claims As of the Date of Lodging, Not Subsequent Claims.

The Consent Decree states that it "resolves the civil claims of the United States and the State for violations alleged in their Complaint through the date of lodging," which was March 9, 2006. The Consent Decree also "resolves the claims set forth in the Citizens' complaint through the date of lodging, together with certain other claims." Consent Decree, ¶ 76. By its terms, the Consent Decree does not resolve claims relating to events after March 9, 2006, including any tort claims and defenses relating to the Kaloko Dam breach that occurred on March 14, 2006.[2]

### 3. The Consent Decree Resolved Claims Relating To Violations of Water Pollution Laws, Not Tort Claims.

Defendants argue that "[e]xamination of the United States and State of Hawaii's Complaint and the Findings of Violation and Order for Compliance clearly demonstrate that it was the intent of all the Parties that the scope of the Consent Decree resolve claims far greater that (sic) simple 'water pollution

---

[2] Defendants state that Plaintiffs' Proposed Order attempts to link alleged future tort law claims to Defendants. Defendants' Opposition at 3. The Proposed Order does not do so; it is completely silent regarding what parties may be subject to such claims.

claims.'" Defendants note that the County of Kauai is a party to the settlement and alleged violations against the Defendants that were wholly unrelated to the Clean Water Act. Defendants' Opposition at 9-10.

Defendants are correct that the County of Kauai was involved in the settlement and was not enforcing the Clean Water Act. Defendants fail to mention that the County of Kauai resolved its claims in a separate state court settlement. Appendix A to Consent Decree. Moreover, Defendants are incorrect regarding the scope of claims settled by the Consent Decree. All of the claims settled in the Consent Decree relate to the same actions by Defendants in violation of water pollution laws—not just the CWA that Defendants recognize, but also the Refuse Act and Hawaii's WPL. These actions include items that Defendants cite as not being water pollution issues, such as discharging fill to waters of the US in violation of the CWA and Refuse Acts, engaging in construction activities that led to discharges that are illegal under water pollution laws, and failing to obtain permits required by water pollution laws. Even if Defendants are correct that the claims are broader than simple water pollution, which DOH disputes, the claims resolved by the Consent Decree clearly do not include subsequent tort law claims, and the Proposed Order is needed to make that clear particularly to the public, which has been carefully following these events.

## IV. CONCLUSION

The Court should issue the Proposed Order Approving the Entry of the Consent Decree for the reasons set forth above.

DATED: HONOLULU, Hawai'i, June 9, 2006.

                MARK J. BENNETT
                ATTORNEY GENERAL

                */s/ Russell A. Suzuki*
                Lisa M. Ginoza
                Russell A. Suzuki
                Deputy Attorneys General
                Attorneys for Department of Health,
                State of Hawai'i

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA, and DEPARTMENT OF HEALTH, STATE OF HAWAI'I,<br><br>Plaintiff,<br><br>v.<br><br>JAMES H. PFLUEGER; PFLUEGER PROPERTIES; and PILA`A 400 LLC,<br><br>Defendants. | CIVIL NO. 06-00140 SPK BMK<br><br>CERTIFICATE OF SERVICE |

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was duly served on this date, on the following parties at their last known addresses, by U.S. mail, first class postage prepaid:

    SUE ELLEN WOOLDRIDGE, Esq.
    Assistant Attorney General
    Environment and Natural Resources Division
    United States Department of Justice
    Washington, D.C. 20530

    DAVID B. GLAZER
    Environmental Enforcement Section
    Environment and Natural Resources Division
    United States Department of Justice
    301 Howard Street, Suite 1050
    San Francisco, California 94105

193940_1.DOC

LAURIE KERMISH, Esq.
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region 9
75 Hawthorne Street
San Francisco, California 94105

LANI D.H. NAKAZAWA, Esq.
County of Kauai
4444 Rice Street, Suite 220
Lihue, Hawai'i 96766

DAVID L. HENKIN, Esq.
Earthjustice
223 South King Street
Suite 400
Honolulu, Hawai'i 96813

WESLEY H.H. CHING, Esq.
Fukunaga Matayoshi Hershey & Ching
Davies Pacific Center
Suite 1200
841 Bishop Street
Honolulu, Hawai'i 96813

NOEL WISE
c/o Wesley H.H. Ching, Esq.
Fukunaga Matayoshi Hershey & Ching
Davies Pacific Center
Suite 1200
841 Bishop Street
Honolulu, Hawai'i 96813

Dated: Honolulu, Hawai'i June 9, 2006

*Russell A. Suzuki* (signature)
RUSSELL A. SUZUKI
Deputy Attorney General